IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SETH TERRY, individually
and on behalf of similarly
situated persons,

        Plaintiff,

    v.

JERRY DON HODGES,

        Defendant.

Civ. No. 6:22-cv-01668-AA

**OPINION & ORDER**

AIKEN, District Judge.

    This case comes before the Court on Plaintiff's Motion for Conditional Certification, ECF No. 19. For the reasons set forth below, the motion is GRANTED.

## LEGAL STANDARD

    The Fair Labor Standards Act ("FLSA") provides for a private right of action to enforce its provisions "by any one or more employees [on] behalf of [ ] themselves

and other employees similarly situated." 29 U.S.C. § 216(b).

The district court has discretion to determine whether a collective action is appropriate. *Hunter v. Legacy Health*, Case No. 3:18-cv-02219-AC, 2021 WL 24553, at *4 (D. Or. Jan 4, 2021). When deciding whether to conditionally certify a collective action, the court uses a lenient standard. *Id.* "All that is required for conditional certification is substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *McElmurry v. U.S. Bank Nat'l Ass'n*, No CV-04-462-HU, 2006 WL 3908536, at *3 (D. Or. Dec. 8, 2006) (internal quotation marks and citation omitted).

Section 216(b) of the FLSA authorizes employees to maintain an action against an employer for violations of the Act on behalf of other employees when the employees: "(1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). The FLSA does not define "similarly situated." *Id.* However, the Ninth Circuit has held "it is now the near-universal practice to evaluate the propriety of the collective mechanism—in particular, plaintiff's satisfaction of the 'similarly situated' requirement—by way of a two-step 'certification process.'" *Id.* First, "plaintiffs will, at some point around the pleading stage, move for 'preliminary certification' of the collective action, contending that they have at least facially satisfied the 'similarly situated' requirement." *Id.* Second, "after the necessary discovery is complete, defendants will move for 'decertification' of the collective action on the theory that the plaintiffs' status as 'similarly situated' was

not borne out by the fully developed record." *Id.*

In the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. "Significantly, as long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019) (quoting *Campbell*, 903 F.3d at 1114). "This court considers the term 'similarly situated' in light of the purposes and goals of a collective action." *Sheffield v. Orius Corp.*, 2011 F.R.D. 411, 413 (D. Or. 2002) (internal citations omitted).

The claims and positions of the employees need not be identical. *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809, at *2 (D. Or. Aug. 24, 2001). "A plaintiff can satisfy the 'similarly situated burden' with a modest factual showing that plaintiff and potential plaintiffs were victims of a common policy or plan that violated the law. *Hunter*, 2021 WL 24553, at *5 (internal citations omitted). "In other words, a plaintiff need demonstrate only a reasonable basis for a claim the employer acted on a class-wide basis." *Id.*

A plaintiff who seeks collective action certification also must show other similarly employees wish to opt in to the action. "This 'opt-in' aspect of § 216(b) means a potential plaintiff does not become a member of the class unless he or she gives consent and the consent is filed with the court." *Hunter*, 2021 WL 24553, at *5. "Thus similarly situated employees become members of the class only by affirmatively

choosing to join the class, and once they are bound by the ultimate judgment in the case." *Id*. "Ultimately, before certifying a collective action, the court must be satisfied there are potential members who desire to opt into the collective action." *Id*. A court may, upon a sufficient basis, "infer that other potential plaintiffs would wish to opt into the proposed class." *Id*. (internal quotation marks and citations omitted).

After a district court grants preliminary certification, putative collective action members are given notice and adviced they must decide whether to opt in to the litigation:

> Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery. The employer can move for "decertification" of the collective action for failure to satisfy the "similarly situated" requirement in light of the evidence produced at that point. The district court will then take a more exacting look at the plaintiffs' allegations and the record.

*Campbell*, 903 F.3d at 1109 (internal citation omitted).

## BACKGROUND

Plaintiff asserts that Defendant Jerry Don Hodges owns and operates multiple Domino's Pizza franchises in Oregon. Terry Decl. ¶ 3. ECF No. 19-6. Defendant asserts that B.J. & H. Enterprises owns and operates the Domino's Pizza franchises and that, although he is the president of B.J. & H. Enterprises, Defendant does not own or operate any Domino's Pizza franchises in his personal capacity. Hodges Decl. ¶¶ 3-4. ECF No. 24. Defendant acknowledges that he has hired and fired employees for B.J. & H. Enterprises. *Id*. at ¶ 6. Defendant has also implemented or overseen the implementation of "certain policies, practices, or procedures," on behalf of B.J. & H. Enterprises. *Id*. at ¶ 12.

Plaintiff Seth Terry was employed at one of the Domino's Pizza franchises as an hourly paid Delivery Driver from August 2021 through May 2022. Terry Decl. ¶ 4. As an hourly-paid Delivery Driver, Plaintiff worked a "dual job" where he would deliver food to customers, and receive tips, and also worked inside the store when not delivering. *Id.* at ¶ 8. In-store employees may also be required to act as Delivery Drivers, if needed. Hodges Decl. ¶ 11. As a Delivery Driver, Plaintiff was paid "a rate at or close to the Oregon minimum wage per hour." Terry Decl. ¶ 9.

Plaintiff affirms that he is aware of other hourly-paid Delivery Drivers employed by Defendant and that he is "personally familiar with the conditions under which other Delivery Drivers worked." Terry Decl. ¶¶ 5-6. Plaintiff affirms that hourly Delivery Drivers "are subject to Defendant's uniform employment policies, practices and procedures, including policies relating to payment of minimum wages and reimbursement of automobile expenses," and that Plaintiff knows this "because I spoke to other hourly Delivery Drivers, and they were paid the same as I was." *Id.* at ¶ 7. Plaintiff avers that "[o]ther hourly delivery drivers has the same or similar job duties and expenses as I did," which Plaintiff knows because he "observed other hourly Delivery Drivers performing these job duties and because other hourly Delivery Drivers and I frequently shared each other's workloads and talked about the work we performed." *Id.* at ¶ 12. Plaintiff also knows that other hourly Delivery Drivers worked schedules similar to Plaintiff's based on his observations of them working and because he had access to the other Delivery Driver's schedules. *Id.* at ¶ 13.

Delivery Drivers were required "to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendant's pizza and other food items." Terry Decl. ¶ 10; *see also* Hodges Decl. ¶ 13 (Delivery Drivers must have access to an insured vehicle which can be used for delivery). Delivery Drivers "incurred job-related expenses, including but not limited to, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs," and other equipment necessary to complete their job duties, "all for the primary benefit of Defendant." Terry Decl. ¶ 11; Hodges Decl. ¶ 14 (Delivery Drivers "must also have access to a phone on which they can access the Domino's Delivery Driver in-store application."). Delivery Drivers were "never fully reimbursed for such expenses." Terry Decl. ¶ 11.

Defendant did not track actual expenses or keep records of those expenses. Terry Dec. ¶ 14.

Delivery Drivers were not reimbursed at for their actual expenses or a reasonable approximation thereof, nor were they reimbursed at the IRS standard business mileage rate. Terry Decl. ¶¶ 15-17. Delivery Drivers were reimbursed at a flat rate of $1.00 per delivery or $1.50 per delivery if they took two orders out for delivery at the same time. *Id.* at ¶18. Plaintiff affirms that this was "an unreasonable underestimation of our automobile expenses." *Id.*

Because Delivery Drivers were paid at or near the applicable minimum wage, the failure to pay reasonable mileage expenses caused their constructive hourly rate to fall below the minimum wage. Terry Decl. ¶¶ 19-22. Other hourly Delivery Drivers

expressed their dissatisfaction with the mileage policy to Plaintiff. *Id.* at ¶ 24.

Plaintiff estimates that there are at least fifty other hourly Delivery Drivers who were employed by Defendant since October 31, 2019. Terry Decl. ¶ 23. Plaintiff knows of at least two other hourly Delivery Drivers, Cheyanne Stockers and Katrina Heaton, who would want to join in the putative collective action. Terry Decl. ¶ 25.

## DISCUSSION

Plaintiff seeks (1) conditional certification of the collective action under Section 216(b) of the FLSA; (2) approval of the use of U.S. Mail and email to distribute the proposed Notice and Consent to Join; (3) approval of the form and contents of Plaintiff's Proposed Notice of Right to Join Lawsuit, Proposed Consent to Join Collective Action, Proposed Text of Electronic Transmissions, and Proposed Reminder Postcard; (4) an order directing Defendant to produce the names and last known mailing address, phone numbers, and email address of each potential opt-in plaintiff in electronically importable and malleable form; (5) an opt-in period of 90 days for potential members of the putative collective to submit a consent to join the lawsuit; and (6) leave to send a follow-up reminder postcard by mail and email to potential plaintiffs who do not respond to the Notice within the first thirty days.[1]

### I.  Conferral

The Local Rules of the District of Oregon require, with certain presently

---

[1] Plaintiff's motion also asks the Court to "Award costs and a reasonable attorneys' fee and grant all other relief to which Plaintiff may be entitled, whether specifically prayed for or not." Pl. Mot. 5. ECF No. 19. Plaintiff does not identify any basis establishing an entitlement to costs and fees for this motion specifically, as opposed to an entitlement to fees should Plaintiff ultimately prevail in the action. Any consideration of fees is premature in the extreme and the Court will consider the issue of fees at the appropriate juncture.

Regarding conferral on the present motion, it is apparent that a good faith effort was made to honor the spirit of the Local Rule, even if the conferral could perhaps have been more searching and structured. The Court is confident that Plaintiff's counsel has now familiarized himself with the Local Rules for the District of Oregon and will fully comply with them in future filings. The Court therefore declines to deny the motion on the basis of a failure to confer.

## II.     Conditional Certification

As previously noted, conditional certification is a lenient standard. *Hunter*, 2021 WL 24553, at *5. "Affidavits in support of a motion for conditional certification must be based on the affiant's personal knowledge, which may be inferred from what he would have probably learned during the normal course of employment." *Norsoph v. Riverside Resort and Casino Inc.*, Case No. 2:13-cv-580-APG-GWF, 2018 WL 5283427, at *4 (D. Nev. Oct. 23, 2018). "The court, however, does not resolve factual disputes, decide substantive issues on the merits or made credibility determinations at the first stage." *Id.*

The Declaration submitted by Plaintiff is sufficient to establish, at the conditional certification stage, that Plaintiff and the other Delivery Drivers were subject to a uniform policy concerning mileage reimbursement that allegedly caused their hourly pay to fall below minimum wage. Plaintiff's Declaration is based on his own experience, observations, and understanding as applied to both himself and to other Delivery Drivers, supported by discussions between Plaintiff and other Delivery Drivers. Defendant's factual challenges are better suited to an argument on

decertification. *See Rosario v. 11343 Penrose, Inc.*, Case No. 2:20-cv-04715-SB-RAO, 2020 WL 8812460, at *5 (C.D. Cal. Oct. 26, 2020) (noting that "the actual merits of Plaintiff's individual claim have little bearing on the choice to conditionally certify.").

To the extent that Defendant argues that certification should be denied because B.J. & H. Enterprises, Inc., and not Defendant, was Plaintiff's true employer, the record does not support Defendant's argument. The FLSA defines an employer broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The "definition of 'employer' under the FLSA is not limited by the common law concept of 'employer' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes," and the "determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity." *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009) (internal quotation marks and citation omitted). "The touchstone is the 'economic reality' of the relationship." *Id.* at 1091 (citation omitted). "Where an individual exercises control over the nature and structure of the employment relationship or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Id.* (internal quotation marks and citation omitted). Joint employers may also be held liable under the FLSA. *Maddock v. KB Homes, Inc.*, 631 F. Supp.2d 1226, 1232-33 (C.D. Cal. 2007).

Here, Hodges's own Declaration establishes that he possessed the authority to hire and fire employees of the company and that he has "implemented or overseen

the implementation of, certain policies, practices, or procedures on behalf of the Company." Hodges Decl. ¶¶ 6, 12. This is sufficient to establish that the "economic reality" of the relationship between the parties was that of employer and employee, at least for purposes of a motion to conditionally certify.

Finally, Defendant argues that the claims of the proposed collective are too individualized to proceed collectively. Such issues are more properly addressed in a motion to decertify. *See, e.g., Holliday v. J.S. Exp., Inc.*, No. 4:12CV01732 ERW, 2013 WL 2395333, at *6 (E.D. Mo. May 30, 2013) ("Defendant's argument that there is no feasible way to adjudicate due to the necessity of individual inquires is premature. Manageability is an issue for the second stage of the conditional certification analysis.").

In sum, the Court concludes that Plaintiff has met his burden and the Court grants conditional certification a proposed collective of all Delivery Drivers employed by Defendant since October 31, 2019.

### III. Form and Contents of the Notice

Defendant has advanced a number of objections to the form and contents of the proposed Notice. Pl. Mot. Ex. 1.

First, Defendant objects that the proposed Notice is misleading, both in its identification of Defendant as the employer of potential collective members and its warning "YOU DON'T HAVE TO JOIN THIS CASE, BUT IF YOU DON'T, YOU WILL NOT RECEIVE ANY MONEY FROM THIS CASE." With respect to the warning, the Court concludes that this is an accurate statement of potential plaintiffs'

rights and is neither misleading nor misinforming. Defendant's objections concerning the warning are overruled.

With respect to Defendant's identification in the proposed Notice as "Jerry Don Hodges d/b/a B.J. & H. Enterprises or Dominos," Defendant objects that this description is inaccurate and does not match Defendant's name in the caption of the case. The Court is not convinced. The proposed Notice properly identifies Defendant is its own caption and the proposed identification of Defendant in the text is clearly meant to connect Defendant's name to the business name and the more common identification of the business as Domino's Pizza. As Plaintiff points out, a more technically correct "Jerry Don Hodges in his personal capacity as owner and operator of B.J. & H. Enterprises or Domino's Pizza" is unwieldy and unlikely to convey any more accurate understanding of who Defendant is than Plaintiff's proposed language. Defendant's objection concerning the name of Defendant in the Notice is overruled.

Defendant's third objection concerns dissemination of the Notice to potential plaintiff's whose claims are time-barred. The Court is satisfied that the proper approach to be as inclusive of potential plaintiffs as possible at the notice stage and that any time-barred claims may be addressed if and when the plaintiffs advancing time-barred claims join the litigation.

Defendant's fourth objection is to Plaintiff's proposal for a ninety-day opt-in period. Defendant proposes that sixty-day period be substituted. The Court finds no basis for restricting the opt-in period to sixty days and concludes that Plaintiff's ninety-day proposal is reasonable. Defendant's objections concerning the length of

the opt-in period are overruled.

Next, Defendant objects that Plaintiff's request to send a reminder postcard to potential opt-in plaintiffs risks pressuring individuals to join the collective or improperly suggests that the Court endorses Plaintiff's claims or expects recipients of the Notice to join the collective action. The Court is not persuaded. The use of reminder postcards is a routine part of FLSA litigation. *See, e.g., Harris v. Vector Marketing Corp.*, 716 F. Supp.2d 835 (N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a postcard is appropriate."). The proposed Notice makes clear that opting into the litigation is voluntary and the proposed reminder postcard does nothing to suggest otherwise. Defendant's objection to the reminder postcard is overruled.

Next, Defendant objects that the notice omits a warning about the potential for an award of Defendant's costs and fees should Defendant ultimately prevail in the case. The district court in *Chastain v. Cam*, No. 3:13-cv-01802-SI, 2014 WL 3734368 (D. Or. July 28, 2014) considered a similar objection. *Id.* at *9. The FLSA only provides for an award of attorney fees and costs to prevailing *plaintiffs*. 29 U.S.C. § 216(b). While Federal Rule of Civil Procedure 54(d) permits and award of costs other than attorney's fees to a prevailing party, "the Court may in its discretion decline to award Defendants such costs, or find that any costs awarded pursuant to Rule 54(d) are taxable only against the original plaintiffs in this action." *Chastain*, 2014 WL 3734368, at * 9. "The uncertain nature of such a fee award is compounded by the risk that this type of notice may provide opt-in plaintiffs with a disincentive to participate

Page 13 –OPINION & ORDER

in the lawsuit." *Id.* This Court concurs with the district court in *Chastain* and concludes that such a warning would serve only to chill participation, especially in light of the uncertainty concerning any potential award of costs against Plaintiff. The Court therefore rejects Defendant's objections concerning language warning of an award of fees or costs against potential plaintiffs.

Defendant's seventh objection is that the proposed Notice does not warn potential plaintiffs of their obligation to participate in discovery. However, the proposed Notice does, in fact, apprise potential plaintiffs that they may have to participate in discovery if they opt into the action. Under the section entitled "EFFECT OF JOINING THIS SUIT," the proposed Notice warns "While the suit is proceeding you may be required to provide information, sit for depositions, and testify in court." Pl. Mot. Ex. 1, at 2. The proposed Notice does inform potential plaintiffs of the possibility of discovery obligations and Defendant's objection on this point is overruled.

Next, Defendant objects that the proposed Notice does not describe the potential for decertification of the collective action. The Court sees no reason why the Notice should include such information and notes that including a discussion of decertification is likely to confuse the recipients and chill participation. The Court declines to order that the Notice discuss decertification.

Defendant's ninth objection asserts that the proposed Notice does not give its statement of the Court's neutrality sufficient prominence or emphasis. The proposed Notice states in the section entitled "DESCRIPTION OF THE LAWSUIT" that "The

Court has not ruled on or decided any of the issues, including the merits of the claims or defenses." Pl. Mot. Ex. 1, at 2. The Court concludes this is sufficient to notify potential plaintiffs that none of the substantive issues in the case have been resolved and that a significant amount of litigation remains before a judicial decision can or will be rendered. Defendant's objection on this point is overruled.

Finally, Defendant asserts that contact information for Defendant's counsel should be provided alongside contact information for Plaintiff's counsel. However, "Defendant's counsel will play no role in managing the distribution of the notice of the gathering of consent forms, and thus including contact information for Defendant's counsel only creates the potential for confusion of those who receive the notice." *Chastain*, 2014 WL 3734368, at *8. (internal quotation marks and citation omitted) "Courts in this circuit have similarly held that requiring the inclusion of defense counsel's name is without a basis in either law or logic." *Id.* This Court agrees and rejects Defendant's proposal that contact information for Defendant's counsel be included the Notice.

## IV. Distribution of the Notice

Defendant makes two objections to the distribution of the proposed Notice. First, Defendant requests that a third-party administrator be appointed to handle the contact information of the potential plaintiffs and the distribution of the Notice. The Court declines to appoint an administrator—the size of the anticipated collective is not especially large and the information Plaintiff seeks is limited to names, last known mailing addresses, phone numbers, and email addresses of potential opt-in

plaintiffs. Plaintiffs do not, for example, seek social security numbers or other sensitive information that would implicate serious privacy concerns. The appointment of a third-party administrator would only be an unnecessary expense which would, by necessity, be imposed on Plaintiff. The Court is satisfied that Plaintiff's counsel will appropriately safeguard the information provided to them about potential plaintiffs and will distribute the Notice and other information consistent with the law and this Order.

Finally, Defendant objects to Plaintiff's request that Defendant be required to provide information about potential opt-in plaintiffs in electronically manipulable format within seven days of the Court's ruling. Defendant objects that the information is not maintained in electronically manipulable format and that assembling the information in that format will take more than seven days. At oral argument, Plaintiff represented that if the information concerning potential opt-in plaintiffs were only available in paper form, then they would accept the information in that from without the need for it to be reduced to electronically manipulable format. The Court concludes that this is a reasonable compromise and orders that Defendant provide Plaintiff with a list of potential opt-in plaintiffs within seven days of the date of this Order and that Defendant make a good faith effort to provide the information to Plaintiff's counsel in a reasonably accessible and consistent format, whether electronic or paper hardcopy.

## CONCLUSION

For the reasons set forth above, Plaintiff's request to withdraw his prior

motion, ECF No. 14, is GRANTED and Plaintiff's Corrected Motion for Conditional Certification, for Approval and Distribution of Notice, and for Disclosure of Contact Information, ECF No. 19 is GRANTED.

The Court conditionally certifies the collective of "All Delivery Drivers since October 31, 2019," as proposed by Plaintiff. The Court conditionally certifies this lawsuit as a collective action for purposes of providing notice of the action to members of the collective.

Defendant is directed to provide Plaintiff with a list of the names, last known mailing addresses, phone numbers, and email addresses of each potential opt-in plaintiff within seven (7) days of the date of this Order, either in electronic format or in paper hardcopy form.

The proposed Notice of Right to Join Lawsuit, Pl. Mot. Ex. 1; Proposed Consent to Join Collective Action, Pl. Mot. Ex. 2; Proposed Text of Electronic Transmissions, Pl. Mot. Ex. 3; and Proposed Reminder Postcard, Pl. Mot. Ex. 4, are approved as to form and content for use in providing notice to potential collective members.

The Court GRANTS Plaintiff's request to distribute the proposed Notice and Consent to Join to potential opt-in plaintiffs through the U.S. Mail and by email. The opt-in period shall be ninety (90) days and shall begin seven (7) days after Defendant produces the names and contact information of the potential opt-in plaintiffs to Plaintiff's counsel. This opt-in period shall be the time in which putative collective members may submit a Consent to Join this lawsuit as opt-in plaintiffs. Opt-in plaintiffs may sign their consent forms by electronic signature.

Plaintiff is permitted to send a follow-up reminder Postcard via U.S. Mail or by email, beginning thirty (30) days after the opt-in period begins, to potential plaintiffs who have not responded to the Notice.

It is so ORDERED and DATED this ___9th___ day of January 2024.

        /s/Ann Aiken
ANN AIKEN
United States District Judge